**COMMONWEALTH OF PENNSYLVANIA et al., Plaintiffs,**

v.

**Joseph F. O'NEILL et al., Defendants.**

**Civ. A. No. 70-3500.**

United States District Court,
E. D. Pennsylvania.

May 26, 1972.

On Application For Stay, May 31, 1972.

See also, D.C., 348 F.Supp. 1084.

# 306

Henry W. Sawyer, III, Drinker, Biddle & Reath, Amy F. Davis, Philadelphia, Pa., for individual plaintiffs.

F. John Hagele, Robert P. Vogel, Asst. Atty. Gen., Community Advocate Unit, Dept. of Justice, Andrew S. Price, Community Legal Serv., Robert Reinstein, Philadelphia, Pa., for individual plaintiffs.

John M. McNally, Jr., 1st Deputy City Solicitor, Murray Goldman, Asst. City So., James M. Penny, Jr., Asst. City Sol., Philadelphia, Pa., for defendant.

A. Charles Peruto, Philadelphia, Pa., for intervenor, Fraternal Order of Police.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

This action was brought by the Commonwealth of Pennsylvania and by certain black citizens of Philadelphia, on behalf of a class consisting of black police officers of the City of Philadelphia, and black citizens of Philadelphia who have unsuccessfully sought employment in the Police Department of the City, or who may wish to obtain such employment in the future, alleging that existing personnel policies within the Philadelphia Police Department have the effect of discriminating unfairly against blacks in both hiring and promotion. Plaintiffs have petitioned for preliminary injunctive relief. Extensive hearings on plaintiffs' application for a preliminary injunction have been held, concluding on May 25, 1972.

At the conclusion of the hearing, the parties were directed to explore the possibility of agreement upon some form of interim relief pending final hearing (both sides having indicated that they would not be ready for final hearing for several months); however, the Court is now advised that the parties have been unable to reach agreement.

During the interval between the first hearing, on April 20, 1972, and the present date, a temporary restraining order has been in effect. This Order merely requires the defendants to notify the Court and plaintiffs' counsel of any contemplated hirings or promotions, so as to afford plaintiffs an opportunity to object. This Order was based primarily upon the assertion by the defendants that no hirings or promotions were contemplated during this interval; and, apparently, no such action has occurred. However, it seems probable that, in order to fill vacancies as they arise, the Police Department may need to hire and/or promote in the very near future, before the parties have had an opportunity to brief or argue the merits of the preliminary injunction request, and before the Court can complete the required careful analysis of the voluminous statistical evidence which has been offered, and set forth the detailed findings of fact which will be required. It is therefore necessary that a more definitive interim order now be entered.

Applicants for appointment to the Police Force are administered a written, civil service-like, examination. Those who pass are then subjected to physical and psychiatric examination. Those who pass are subjected to an extensive investigation of their backgrounds, by employees of the Police Department. Those

who pass all of these steps are then certified as eligible for appointment to the Police Academy.

The principal thrust of plaintiffs' evidence is to the effect that (a) the written examinations discriminate unfairly against blacks, and do not meet the criteria of the guidelines established by the Equal Employment Opportunity Commission (EEOC); (b) the background investigation process discriminates unfairly against blacks, both in the selection of the kinds of adverse factors which serve to disqualify, and in the application of the factors selected. The defendants, on the other hand, contend that some of plaintiffs' statistical data may be inaccurate, and that the data do not support the conclusions reached by plaintiffs' expert witnesses.

The evidence which has been presented includes a mass of statistical exhibits, depositions, affidavits, and oral testimony, all of which must be carefully analyzed before deciding whether a preliminary injunction, effective until final hearing, should be entered. And, admittedly, the statistical evidence on both sides is subject to further amplification and refinement before final hearing. If plaintiffs' evaluation of the statistical data is found to be correct, several forms of relief would probably be appropriate: the written examinations would have to be validated in terms of job performance, a process that might take several months; depending upon the outcome of such validation studies, the tests might require revision or complete replacement; and the process of background screening would have to be revised. Apart from the question of damages in certain cases, it might ultimately prove necessary to require corrective action to bring about an appropriate racial balance. Contrary to some of the arguments expressed at the hearings, this does not, of course, imply any "lowering of standards," but rather the adoption of proper standards, consistent with maintenance of a qualified, competent police force.

However, until the statistical evidence has been fully analyzed, and findings of fact made thereon, it would in my view be improper to assume the necessity of affirmative corrective action to achieve any greater degree of racial balance than is embodied in the existing applications.

■ Accordingly, an order will be entered which will permit the Police Department to hire such additional policemen as are needed to fill vacancies as they arise, provided at least one-third of those hired are members of the black race. (This figure roughly corresponds to population ratios, and to a conservative estimate of the racial make-up of applicants to the force.) The defendants will be free to utilize existing selection procedures, thus insuring that those hired will meet current standards of eligibility. The defendants will, of course, be required to retain adequate and complete records of all applicants, whether or not they pass the written examination, and whether or not they pass the background screening.

■■ With respect to promotions, a correct solution is less clear, and involves many more intangibles. The need to make promotions in the near future may be less pressing. The probability that all persons on the certified lists are adequately qualified seems greater. Since all persons on promotional eligibility lists have successfully dealt with the original written examination for admission to the Police Academy, and with the various tests administered at the Academy, there is a greater likelihood that any existing disparity in number between blacks and whites would be attributable to the discriminatory impact of past hiring practices, rather than to the promotional examination itself (hence to be corrected, if at all, after final hearing). On the other hand, conflicting morale factors must be considered: departmental morale would be adversely affected if blacks who appear substantially less qualified were to be promoted in place of substantially better qualified whites; but departmental

morale would also be adversely affected if promotions are made on a basis which ultimately may be found to be discriminatory against blacks. On balance, I have concluded that, during the relatively brief period during which the order about to be entered will remain in effect, it is unnecessary for the Court to impose restraints against promotions from existing eligibility lists. If it should develop that any such promotions are tainted, corrective measures can be taken at a later stage of these proceedings.

It is assumed that, during the relatively brief period pending decision on plaintiffs' request for preliminary injunction, only those promotions which are deemed essential to the proper functioning of the Police Department will be made; and that, as among individuals of substantially equal standing on the eligibility lists, every effort will be made, consistent with maintenance of morale within the Department, to observe the one-third—two-thirds minimum standard referred to above.

It is also assumed that, in order to avoid any suspicion of partiality, the defendants will take appropriate steps to insure meaningful participation by black police personnel in decisions relating to acceptability of applicants on the basis of the results of the background investigations.

### ORDER

AND NOW, this 26th day of May, 1972, after hearing, it is ORDERED:

1. That the parties shall submit briefs, within fifteen (15) days, on the issues raised by plaintiffs' petition and amended petition for preliminary injunction;

2. That, until July 1, 1972, or until further order of this Court in the interim, the defendants, their agents, employees and any others acting on their behalf, are temporarily restrained from hiring any policemen except such as may be required to fill existing vacancies in the complement of police officers as it was established as of March 1, 1972;

and, in hiring any such additional policemen, are directed to hire at least one member of the black race for every two members of the caucasian race;

3. That, except as hereinabove provided, the temporary restraining order entered April 20, 1972, is hereby vacated; and

4. That no security will be required.

(s) John P. Fullam,
J.

### ON APPLICATION FOR STAY

The defendants have applied for a stay of the restraining order entered by this Court on May 26, 1972, pending appeal therefrom. After conference with counsel, it appears that the defendants' proposed appeal, and present application for a stay, relate only to paragraph 2 of the Order. The challenged provision, which by its terms will expire on July 1, 1972 or upon further order of this Court entered before that date, restricts the defendants from hiring new policemen, except to fill vacancies in the complement as it stood on March 1, 1972, and unless at least one black is hired for every two whites.

It was and is the position of the plaintiffs that they are entitled to a preliminary injunction which would prevent the defendants from using the results of the present form of written examination in determining eligibility for appointment to the police force, and which would further prevent the defendants from disqualifying applicants on the basis of the present form of background investigation. Whether or not such preliminary relief is justified will be determined after the Court has received the briefs and arguments of both sides, and has made its detailed analysis of the statistical evidence presented, and has entered appropriate findings of fact and conclusions of law. Briefs are to be filed on or before June 12, 1972, and it is anticipated that a final decision on plaintiffs' request for preliminary injunction will be rendered shortly thereafter, certainly before July 1, 1972.

The interim injunctive provisions contained in paragraph 2 of the Order of May 26, 1972 were designed to preserve the *status quo* insofar as practicable, pending briefing and decision, without unduly hampering the defendants in their efforts to meet the personnel requirements of the Police Department. It seems doubtful that even a total ban on hiring until after July 1 would have caused any serious problem to the defendants, whereas to permit the defendants to continue hiring policemen on the basis of tests and procedures which have been shown to have a discriminatory impact would cause irreparable harm to plaintiffs and the members of the plaintiff class. In point of fact, the Court was advised at the hearing on April 20, 1972, that the defendants had no plans to hire any additional policemen until "early July," the tentatively scheduled beginning date of a new class at the Police Academy. At the conference in connection with the present stay application, counsel for defendants reiterated this proposition, but indicated that it would be desirable from their standpoint to be able to undertake preliminary procedures for selection of the members of the class in advance of the July 1 beginning date.

It is to be noted that the Order of May 26, 1972, does not require the defendants to do anything. It merely gives them the alternative that, if they wish to insist upon hiring additional policemen before July 1, without awaiting the outcome of the preliminary injunction request, they may do so, and may use the selection procedures under attack, but only if they overcome the seemingly discriminatory impact of the current testing and screening process, by hiring in approximately the same racial proportion as existed among applicants. This condition of the Order closely parallels the relief suggested by the First Circuit in Castro et al. v. Beecher et al., 459 F.2d 725 (1st Cir., April 26, 1972); *see also* Chance v. Bd. of Examiners, 458 F.2d 1167 (2d Cir., April 4, 1972).

Counsel for the defendants have advised the Court that there is an established list of eligibles, and that it is the defendants' intention to select for the incoming class at the Police Academy an appropriate number from that list. However, counsel were unable to provide any information as to the racial breakdown of the eligibility list. Thus, for all the record shows, the two-for-one condition imposed by the Order of May 26, 1972, may actually impose no burden whatever upon the defendant's plans. On the other hand, if applying the two-for-one ratio means that some whites on the present eligibility list would be "passed over" temporarily, this could easily be adjusted when the next class is selected.

Moreover, it must be emphasized that, as stated at the conclusion of the hearing on May 26, on the basis of the testimony thus far presented, it seems probable that plaintiffs' attack on the testing and screening procedures themselves may be successful. I do not intend to decide these matters until briefs have been filed, but merely wish to point out that the continuing validity of the present eligibility lists is questionable.

And finally, the Order which defendants seek to stay relates only to hiring between now and July 1. It does not preclude the defendants from taking any preliminary steps they may wish to take in preparation for the proposed new class of recruits. Final decision on plaintiffs' application for preliminary injunction will be rendered in advance of the July 1 date. It is for the defendants to decide what preparatory steps they may wish to take in the interim. In any event, there is no reason to suppose that any genuine harm would be suffered, even if the defendants were to postpone their preparations until the preliminary injunction issues have been decided.

In short, in weighing the issues raised by the motion to stay, I find that the plaintiffs have established a reasonable likelihood of success on the merits, that

**310**

irreparable harm to the plaintiffs and to the class they represent would be likely to occur in the absence of the injunctive provisions of the Order of May 26, 1972, and that no harm to the defendants or to the public, or anyone else, would result if the Order were to remain in effect according to its terms. The motion for a stay will be denied.