506 F.2d 542
 Gerald G. GOODE et al., Appellants in No. 73-2023,
v.
Frank L. RIZZO, Mayor, City of Philadelphia, Pennsylvania,
et al., Appellantsin Nos. 73-2024 and 73-2025.
COUNCIL OF ORGANIZATIONS OF PHILADELPHIA POLICE
ACCOUNTABILITY ANDRESPONSIBILITY et al.,
Appellants in No. 73-2079,
v.
Honorable James H. J. TATE et al.
Appeal of Frank L. RIZZO et al., in Nos. 73-2077 and 73-2078.
 Nos. 73-2023 to 73-2025 and 73-2077 to 73-2079.
 United States Court of Appeals, Third Circuit.
 Argued June 10, 1974.
Decided Nov. 1, 1974, Certiorari Granted March 31, 1975, See
95 S.Ct. 1443.
 
 Peter Hearn, F. John Hagele, Nancy J. Gellman, Jack J. Levine, Philadelphia, Pa., for appellees in Nos. 73-2024 and 73-2025 and for cross-appellants in 73-2023; Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel.
 James M. Penny, Jr., Asst. City Sol., John Mattioni, Deputy City Sol., Martin Weinberg, City Sol., Philadelphia, Pa., for appellants in Nos. 73-2024, 73-2025, 73-2077 and 73-2078, and cross-appellees in Nos. 73-2023 and 73-2079.
 William Lee Akers, Philadelphia, Pa., Harry Lore, Philadelphia, Pa., for appellees in Nos. 73-2077 and 73-2078 and cross-appellants in 73-2079.
 Barry S. Kohn, Deputy Atty. Gen., Israel Packel, Atty. Gen., Community Advocate Unit, Philadelphia, Pa., for Commonwealth of Pennsylvania, amicus curiae, on behalf of appellees in Nos. 73-2023 and 73-2025.
 Robert M. Landis, Samuel T. Swansen, Stephen M. Cushmore, Philadelphia, Pa., for Philadelphia Bar Assn., amicus curiae, for appellees in 73-2023 to 73-2025 and cross-appellants in 73-2023; Dechert, Price & Rhoads, Philadelphia, Pa., of counsel.
 Charles C. Hileman, III, C. Gary Wynkoon, Philadelphia, Pa., for the Lawyers' Committee for Civil Rights Under Law, amicus curiae; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.
 Frederic L. Ballard, Michael Lehr, Philadelphia, Pa., for Greater Philadelphia Movement, amicus curiae.
 Before STALEY, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 A delicate balancing between the functions of the federal district court and the police department of the City of Philadelphia is the essence of the controversy presented in this appeal. A finding by the trial court that a modification of internal procedures for handling citizens' complaints is an adequate remedy for preventing future misconduct by a minority of policy officers is sufficiently supported by the record. But, an assessment of counsel fees in this 1983 case must be remanded for further proceedings.
 
 
 2
 Two separate cases were filed by different plaintiffs, all purporting, however, to represent essentially the same class of persons.[1] The defendants also were generally the same, being the Mayor and other city and police officials.[2] The two cases were consolidated by the district judge for final disposition, and we therefore, as did he, treat this litigation as unitary.
 
 
 3
 The plaintiff produced evidence which the district court found adequate to establish a pattern of violations of the legal and constitutional rights of citizens by Philadelphia police, particularly in the areas of 'arrest for investigation, charges of resisting arrest when the arrest was initially unlawful, extreme over-reaction to actual or reported assaults upon policemen and in the treatment of people who question or criticize police activity in particular instances.'
 
 
 4
 The testimony was presented by victims of police misconduct or witnesses to it and encompassed more than thirtyfive incidents, not all of which were found to be examples of improper activity on the part of the officers. The district judge summarized each incident in his voluminous findings of fact and concluded that, while misconduct is attributable to only a small percentage of the members of the police force, the violations take place with such frequency that 'they cannot be dismissed as rare isolated instances; and that little or nothing is done by the city authorities to punish such infractions, or to prevent their recurrence.'[3]
 
 
 5
 The existing police procedures for processing and adjudicating citizen complaints and for enforcing police discipline were evaluated, the court finding that the arrangements then existing were totally inadequate because:
 
 
 6
 1. The procedures were geared to handle infractions of police regulations but these rules were not framed to cover specific violations of citizens' constitutional rights;
 
 
 7
 2. Complaints were handled on a 'chain of command' basis which discouraged civilian complaints;
 
 
 8
 3. There was no adequate opportunity for the complainant to present his case to an objective tribunal;
 
 
 9
 4. The outcome of the proceedings were not disclosed; and
 
 
 10
 5. There was a tendency to minimize consequences of proven police misconduct.
 
 
 11
 Although the plaintiffs had asked for a sweeping equitable decree, including the appointment of a 'receiver' to supervise the police department and the civilian review of police activity, the trial court concluded that a much more limited form of relief was appropriate. It required the defendants to revise the procedures within the police department for processing citizens' complaints against the police, including such matters as:
 
 
 12
 1. Preparing and distributing appropriate forms for the submission of complaints;
 
 
 13
 2. Prompt and adequate investigation;
 
 
 14
 3. Adjudication by an impartial body insulated from command pressures; and
 
 
 15
 4. Fair opportunity for both complainants and police officers to present their cases, followed by notification to the parties of the outcome.
 
 
 16
 The court stated that its guidelines pose no threat to vigorous law enforcement, are consistent with generally recognized minimal standards, and impose no substantial burden on the police department. The district court also concluded that an award of counsel fees and expenses to the plaintiffs was justified and assessed sums totalling $39,417.58 against 'the defendants.'
 
 
 17
 The defendants appeal from the judgments in all respects. The plaintiffs COPPAR and Goode cross-appeal on the ground that the grant of counsel fees is inadequate, and COPPAR cross-appeals from the denial of its request for the appointment of a receiver.
 
 I.
 
 18
 We first consider the defendants' challenge to the plaintiff's standing to maintain this suit on the ground that the requirements set out in O'Shea v. Littleton, 414 U.S. 488 94 S.Ct. 669, v. Littleton, 414 U.S. 488, 94 S.Ct. 669, met. In that case the Supreme Court found a lack of standing when the complaint did not allege injury on the part of any of the named plaintiffs and no class determination had been made. But, a few months later, in Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 2201, 40 L.Ed.2d 566 (May 21, 1974), the Court noted, '. . . Moreover as, to this portion of the decree, directed at police misconduct generally rather than to any particular state statute, named plaintiffs intimidated by misconduct may represent all others in the class of those similarly abused . . .'In the case sub judice, the named plaintiff, Gerald Goode, alleged in the complaint and established at the trial an incident where he was the victim of an illegal arrest and beating by Philadelphia police.[4] Herbert Brown, another named plaintiff, alleged an illegal beating by the police which presented an arguably constitutional violation.
 
 
 19
 While the GOODE complaint is loosely drawn, a fair reading shows that the individual plaintiffs allege a series of illegal arrests and unauthorized entry into their homes by police officers. Many of the named plaintiffs did not testify at the hearing. However, at the direction of the trial judge at a pretrial hearing, a list of other names and a description of the incidents in which they were involved were filed with the court. Although somewhat informal, this may properly be considered an amendment to the complaint and was so treated by the district court. Many of these additional parties testified in the district court.
 
 
 20
 Although more precision and attention to the appropriate procedural rules by the parties would have been helpful, from a practical standpoint we conclude that the requisites for standing have been met.
 
 
 21
 There is a distinction too between the underlying situation in the O'Shea case and the instant litigation. In O'Shea v. Littleton, supra, the Court was concerned with the fact that the injunction sought by the plaintiffs would affect events which would take place during state criminal trials, thus violating the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Here, on the other hand, the plaintiffs were concerned with alleged police practices which would not come to the attention of a state court in most instances because prosecutions were not instituted or were dismissed at a very early stage. Furthermore, unlike the O'Shea litigation, the Court did determine the applicable class to be all the citizens of Philadelphia and an included class of all black residents of the City.[5]
 
 II.
 
 22
 The trial court's conclusion that there were widespread violations of constitutional rights through police misconduct is attacked by the defendants as being inconsistent with the finding that only a small percentage of the officers on the force are accountable for these actions. The defendants also assert that the number of separate incidents presented to the court formed an inadequate basis for a finding of a pattern or practice.
 
 
 23
 There is no mathematical formula which can be of assistance in determining how many witnesses or how many incidents are needed to establish a pattern of conduct by any group in a community. The trial judge must work with the material that is presented to him and must decide whether sufficient credible data are available to reach a conclusion. It is his responsibility primarily, and an appellate court must accord great deference to that fact finding process. In a case of this nature, too, we are conscious of the weight which must be given to the findings of a trial judge which are dependent upon and interwoven with intensely local conditions and circumstances. Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973).[6]
 
 
 24
 We have noted also, as did the district judge, that the police officials of Philadelphia entered into a consent decree in Alexander v. Rizzo, supra,[7] agreeing to modify the procedures to be followed when a person is to be interrogated in the course of a criminal investigation. Compliance with that decree will serve to prevent recurrence of some of the types of illegal conduct about which the plaintiffs here complained. We need not consider, nor did the district court, whether this consent decree has any collateral estoppel effect as to the existence of a pattern of misconduct by police officers. Nevertheless, it was a factor to which the trial judge could give some weight in arriving at his findings.
 
 
 25
 Our review of the lengthy record in this case in addition to the contents of the appendix submitted by the parties does not reveal findings of fact which are clearly erroneous or conclusions which are not supported by reasonable interpretation of those underlying facts. See Fed.R.Civ.P. 52; Wright & Miller, Federal Practice and Procedure: Civil 2585, 2587.
 
 
 26
 We conclude that there was an adequate evidentiary record to support the findings of the district court that violations of constitutional rights by the Philadelphia police occurred in an unacceptably high number of instances and that in the absence of change in procedures such violations are likely to recur.
 
 
 27
 That we do not reverse the district court's conclusions, however, does not mean that we are unaware of the idealism and dedication of the vast majority of police officers. Their duties are difficult and dangerous, and the work which they perform is too often unheralded and unappreciated. Even a casual review of the record of the citations for bravery awarded to some of the offending officers in this case cannot but impress the reader with the fact that often the most routine assignment may suddenly turn into one involving death or serious injury to the policemen. And yet, we place upon these officers the additional burdens of almost superhuman patience and forbearance in the face of hostile and provocative conduct and insist that they accord full legal protection and respect to those who would deny similar treatment to the officers. But such high standards must be maintained because of the tremendous importance of police work to the maintenance of an orderly society without which no rights can survive. We would fail in the respect which we owe the vast majority of policemen should we not fail to correct the derelictions of the few who do not meet the difficult standards which the community requires.
 
 III.
 
 28
 The district court's order granting relief is limited and moderate in tone indicating its faith in the ability and willingness of the police department to investigate and correct the transgressions of its errant members. Despite the assertions of the defendants, the court is not thrusting itself into the day to day operations of the police department-- a situation which we agree would be inadvisable and inappropriate in the circumstances of this case. Cf. Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966). Indeed, the procedures which the district court required be implemented by the police department for the receipt, investigation, and disposition of civilian complaints are fully in accord with the American Bar Association Standards Relating to the Urban Police Function, which were unanimously approved by the Executive Committee of the International Chiefs of Police in December, 1972.
 
 
 29
 We agree with the district court in its refusal to appoint a 'receiver' for the police department as requested by COPPAR. Whether such action might ever be necessary in the most extreme circumstances, we need not here consider because the factual situation in this case would not warrant such action. See Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir. 1971).
 
 
 30
 We emphasize that the district judge did not find that the plaintiffs were entitled to a change in the disciplinary procedures of the police department as a matter of constitutional right. The decision on the necessity for relief was based upon violations of constitutional rights which had occurred and which he found would be recurring. It was only in the context of the proper remedy to be utilized that the district court reviewed the existing procedures and found them inadequate. The revisions were one of the forms of relief available and were ordered because they appeared to have the potential for prevention of future police misconduct. Lewis v. Kugler, supra. See also The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143 (1968); Injunctive Relief for Violations of Constitutional Rights By the Police, 45 Colo.L.Rev. 91 (1973).
 
 IV.
 
 31
 While we find no error in the injunctive not believe that the record adequately not believe that therecord adequately explains the award of counsel fees to the plaintiffs.
 
 
 32
 The district court filed an order as follows:
 
 
 33
 '1. That the defendants shall pay to the plaintiffs in the Goode case, Civil Action No. 70-491, counsel fees in the sum of $25,000, plus disbursements and costs in the sum of $4,167.58.
 
 
 34
 '2. That the defendants shall pay to the plaintiffs in the COPPAR case, Civil Action No. 70-2430, counsel fees in the sum of $10,000, plus disbursements and costs in the sum of $250.'
 
 
 35
 The accompanying memorandum recited that the court's discretion was exercised in favor of the award of counsel fees because 'the cases were brought for the vindication of constitutional rights, significant violations were established, and the plaintiffs succeeded in obtaining relief which should prove beneficial to all of the citizens of Philadelphia.' The court also noted that the parties had been unable to reach an amicable agreement, even after its order setting out guidelines had been filed, and that the results achieved could not have occurred without the need for litigation. Nevertheless, the memorandum concluded that while plaintiffs' counsel had performed a valuable public service,[8] punitive measures were not called for. The memorandum and orders are ambiguous and leave us in doubt as to the basis on which the court exercised its discretion and by whom the payments were to be made.
 
 
 36
 Even if statutory authority is lacking, in the exercise of their equitable powers federal courts may award attorneys' fees when the interest of justice so requires. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Although the rule is broadly stated, in application the power is generally exercised in three categories:
 
 
 37
 1. Where there has been bad faith, vexation, or oppression. In this class of cases, the punitive aspects predominate. See e.g., Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Monroe v. Board of Commissioners of City of Jackson, 453 F.2d 259 (6th Cir. 1972).
 
 
 38
 2. Where a common fund has been created, or closely analogous to this, where a definable class benefits from the litigation and an award enables the court to spread the expense among all who benefit. E.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Cf. Brewer v. School Board of City of Norfolk, 456 F.2d 943 (4th Cir.), cert. denied 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136, sub nom. 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972).
 
 
 39
 3. Where the private attorney general theory may have application-- that is, where the litigation was instituted to vindicate a policy granted a high priority by a congressional action. See, e.g., Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).[9] However, the equitable power may be circumscribed by Congress. Hall v. Cole, supra.
 
 
 40
 Although 42 U.S.C. 1983 contains no language dealing with counsel fees, there have been awards under the general equitable power in some cases brought under the terms of the statute. See Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (No. 73-1613, 3d Cir., May 3, 1974, amended June 11, 1974), and see the compilation of cases in Gates v. Collier, 489 F.2d 298 (5th Cir. 1973).[10]
 
 
 41
 The district court did not articulate the basis which it felt justified an award, and we think it important that this be done. Why the fees should be paid has significance in determining who is liable, and we do not feel that we should engage in speculation as to the district court's rationale.
 
 
 42
 We have similar difficulty in divining the district court's intentions as to the source of funds to satisfy the awards. There are two obvious alternatives: the defendants personally or the City of Philadelphia. Each choice, however, poses special problems which require examination by the district court, perhaps with additional fact finding for clarification.
 
 
 43
 Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), makes clear that officials in the executive department may be personally liable for damages in 1983 cases. However, a qualified immunity is available as a defense when there is good faith on the part of the defendant. In Skehan v. Board of Trustees, supra, we held that this immunity would apply to assessments for counsel fees as well as to damages.
 
 
 44
 In the exercise of discretion, too, the district court should consider the fact that the defendants apparently did not personally participate in the incidents which led to the necessity of injunctive relief. Respondent superior is not applicable in its traditional sense since the defendant officials are not employers. Both subordinates and officials are employees of the governmental unit. Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). In Bracey v. Grenoble, 494 F.2d 566 (3d Cir. 1974), this court assumed, arguendo, that no damages for the actions of a subordinate could be imposed upon a governmental official in the absence of his actual knowledge of, acquiescence in, or participation in the unlawful activity. See also Vicarious Liability Under 1983, 6 Ind.L.Rev. 509 (1973).
 
 
 45
 Furthermore, we note that some of 'the defendants' were not in office at the time the incidents arose and were substituted as parties only after the lawsuits were close to conclusion.[11] Similarly, some of the defendants who were officials during the period when the incidents occurred were not included among those liable since they were not parties at the time the order was entered.[12]
 
 
 46
 To summarize then, if it is the intention of the district court to find the defendants personally liable for an award of counsel fees, it will be necessary to consider the issues of:
 
 
 47
 1. official immunity;
 
 2. vicarious liability; and
 
 48
 3. identification of the individuals liable. Additionally, if it is comtemplated that personal liability will be imposed, the equitable basis for making any award will require analysis. For example, the equities involved in a private attorney general or spreading-the-cost theory are less apparent if individuals are being ordered to reimburse the plaintiffs than if a large entity in which all claim membership is to pay the assessment. Correspondingly, the traditional test of obduracy and intransigence may have far more significance if individual liability is involved.[13]
 
 
 49
 If it is the thought that the City of Philadelphia, although not a party to this litigation, is to be the source of the funds, then other issues must be passed upon by the district court with appropriate assistance from counsel.
 
 
 50
 Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), clarified some earlier uncertainty by holding that a city is outside the ambit of 1983 'for purposes of equitable relief as well as damages' and may not be a named defendant in such a case. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), held that while an injunction could be issued against a state officer, damages or 'equitable restitution' could not be imposed when in fact they would come from the state. We held in Skehan v. Board of Trustee, supra, that the prohibition of the Eleventh Amendment extends to an award of counsel fees from the state treasury, although that would not be so if the payment were to be made by a college which was a subsidiary governmental unit.[14]
 
 
 51
 The district court, therefore, should consider whether under the facts and circumstances present in this case the rationale of Edelman as it deals with sovereign immunity should apply to the statutory exclusion granted a city under 1983.[15]
 
 
 52
 Another matter which may be of significance is whether any of the individual defendants would have the power under the city charter or Pennsylvania law to authorize disbursement of funds in this situation. In exercising its discretion to award counsel fees, the district court would no doubt be concerned with the efficacy of its pronouncement.
 
 
 53
 The issues which would be raised by an award of counsel fees in this case are broad and complex. We believe they should be resolved only upon a record which would clearly specify the grounds upon which the district court relied. Of course, we take no position at this time as to whether fees should be awarded or if so, against whom they should be assessed.
 
 
 54
 The judgment of the district court will be affirmed as to the injunctive relief granted but will be vacated and remanded as to the award of counsel fees for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The district court ordered that the Goode case could be maintained as a class action on behalf of all residents of the City of Philadelphia and an included class of all black residents of Philadelphia. The complaint in the COPPAR case alleged the class to be composed of the plaintiff and black and white persons in the City of Philadelphia expressing political views contrary to defendants and advocating police responsibility to the community. COPPAR is an acronym for the Council of Organization on Philadelphia Police Accountability and Responsibility
 
 
 [2]
 The original complaint in the Goode case named the following defendants:
 James H. J. Tate, Mayor, City of Philadelphia Fred T. Corleto, Managing Director, City of Philadelphia Frank L. Rizzo, Commissioner of Police, City of Philadelphia Robert G. Selfridge, Deputy Commissioner of Police, City of Phila. William Murphy, Captain, Police Department, City of Philadelphia
 By Order of Court, dated September 11, 1973, the following defendants were substituted:
 Frank L. Rizzo, Mayor, City of Philadelphia Hillel S. Levinson, Managing Director, City of Philadelphia Joseph F. O'Neill, Commissioner of Police, City of Philadelphia Morton B. Solomon, Deputy Commissioner of Police, City of Phila. William Murphy, Captain, Police Department, City of Philadelphia
 In COPPAR, the original named defendants were:
 Honorable James H. J. Tate; Frank L. Rizzo; Fred T. Corletto; Arlen Spector.
 The record does not reveal any substitution of the named defendants, despite the court's order of March 14, 1973, directing the plaintiffs to make appropriate amendments to the caption of the case to reflect changes in personnel.
 
 
 [3]
 COPPAR v. Rizzo, 357 F.Supp. 1289, 1319 (E.D.Pa.1973)
 
 
 [4]
 In a suit for damage in the state court against the individual police officers and the City of Philadelphia Goode was given a judgment by a board of arbitration against the City of Philadelphia although no finding was entered against the policemen personally. That case was appealed to the Court of Common Pleas of Philadelphia County
 
 
 [5]
 The designation of class was granted by the district court under the provisions of Rule 23(b)(2), which reads:
 'An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . .'
 The defendants have not questioned the class designation on the basis of size or definition and therefore, we do not consider those elements. Cf. Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971).
 We also note that the defendants in the case of Alexander v. Rizzo, Civil Action No. 70-992 (E.D.Pa.1972), entered into a consent decree in which they stipulated that the final order was 'for the benefit of every member of the class of plaintiffs referred to in the Complaint . . .' The Alexander complaint reveals that the action was brought on behalf of all black residents of the City of Philadelphia. (Complaint, para. 5)
 
 
 [6]
 It is not inappropriate to note that the same district judge decided the case of Hughes v. Rizzo, 282 F.Supp. 881 (E.D.Pa.1968), where an injunction against alleged police misconduct was denied. That same judge is presently retaining jurisdiction of the case of Commonwealth of Pennsylvania v. Joseph F. O'Neill et al., 345 F.Supp. 305 (E.D.Pa.1972), involving the hiring practices of the Philadelphia police
 
 
 [7]
 See note 5, supra
 
 
 [8]
 In the Goode case, the court remarked that the efforts of plaintiffs' counsel were more nearly successful and their efforts were more directly devoted to attempting to obtain a rational solution but in the COPPAR litigation the plaintiffs were 'somewhat less sensitive to the true public interest' and were less inclined toward an amicable settlement along the lines ultimately set out by the court
 
 
 [9]
 The Supreme Court expressly declined to rule on this theory in Hall v. Cole, supra, although it discussed it in Newman v. Piggie Park Enterprises, supra, where the Civil Rights Act of 1964, 42 U.S.C. 2000a-3(b) permitted an award of counsel fees in the court's discretion. See also Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (May 15, 1974), where the Court noted the high priority particularly accorded desegregation matters. In Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), the Court expressly declined to consider whether and under what circumstances an award of attorneys' fees might be permissible in 1983 litigation
 
 
 [10]
 Many of the cases fail to distinguish between awards made under 1981, 1982 and 1983 even though these sections are derived from separate statutes and the rationale applicable to 1982, for example, may not apply to 1983. See, e.g., Lee v. Southern Home Sites Corp., supra, where the court cites the absence of criminal sanctions to enforce 1982 as one reason to encourage private attorney general actions
 
 
 [11]
 See note 2, supra
 
 
 [12]
 The former district attorney of Philadelphia would be liable under this order for a share of the counsel fees awarded the plaintiffs even though no member of the district attorney's staff was in any way involved in the incidents which convinced the court that injunctive relief was required. In Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), this court held that the district attorney is not liable for damages under 1983 because of judicial immunity
 
 
 [13]
 In discussing fees, the district court did say that 'punitive measures are not called for' and that 'no conscious policy of permitting or encouraging widespread violations of constitutional rights by police officers' existed
 
 
 [14]
 The court's opinion noted that a cause of action under 28 U.S.C. 1331 had been asserted and that therefore it was not significant that the college was not a 'person' under 1983. Since the parties to the litigation sub judice argued only 1983 jurisdiction, we consider only that theory. Moor v. County of Alameda, 411 U.S. 693, 696 n. 4, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Convincing proof of the parties' intent is the COPPAR motion to add the City of Philadelphia as a defendant on the expectation that the Moor v. County of Alameda case, supra, which was then pending in the Supreme Court, would result in a county being declared a 'person.' The motion was not acted upon, and the city is a named defendant in neither case. Goode asserted only 1983 and 1988 claims. We leave open for district court consideration the question of 1331 jurisdiction which COPPAR alleged. As to whether Goode could amend to allege such a jurisdictional ground, see 28 U.S.C. 1653. Similarly, whether the City of Philadelphia could or should be joined under 1331 is not before us, and in view of such problems as the statute of limitations, laches and respondeat superior, we do not pass upon it
 
 
 [15]
 There are numerous cases in which counsel fees have been assessed against school boards without any discussion of whether those entities are 'persons' under 1983. The definition of 'person' under this specific statute is far from clear, and there are inconsistencies in the case law. Contrast, for example, U.S. ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969), with Scher v. Board of Education of Town of West Orange, 424 F.2d 741 (3d Cir. 1970). For a resume of the cases in this circuit demonstrating the problem, see Thornberry, Suing Public Entities Under the Federal Civil Rights Act: Monroe v. Pape Reconsidered, 43 U.Colo.L.Rev. 105 (1971). The Supreme Court has met the issue only in cases involving cities and counties. Kenosha v. Bruno, supra, Moor v. County of Alameda, supra, and Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Curiously, despite the many cases before the Supreme Court in recent years in which school boards were among the named defendants, the issue of whether the board is a 'person' has never been decided by the Court. For the view that the 'person' exclusion should be narrowly construed in order to carry out the purpose of the Civil Rights Act, see Kates and Kouba, Liability of Public Entities Under Section 1983 of the Civil Rights Act, 45 S.Cal.L.Rev. 131 (1972)