**Kurt OSTRANDER, Plaintiff**

v.

**Martin F. HORN, et al., Defendants**

**No. CIV. A. 3:00–1606.**

United States District Court,
M.D. Pennsylvania.

May 11, 2001.

---

Kurt Ostrander, Waynesburg, PA, Pro se.

Peter Hobart, Camp Hill, PA, for Defendant.

*MEMORANDUM*

MANNION, United States Magistrate Judge.

Presently pending before the court is the defendants' motion to dismiss the plaintiff's complaint. (Doc. No. 6).

Plaintiff, a former inmate at the State Correctional Institution at Frackville, ("SCI–Frackville"), Pennsylvania [1], filed this civil rights action pursuant to 42 U.S.C. § 1983, in which he alleges a violation of his constitutional rights. (Doc. No. 1).

The plaintiff has named the following as defendants to this action: Martin F. Horn, Secretary of the Department of Corrections; Joseph Chesney, Warden, SCI–Frackville; and thirty (30) "Unknown CERT Officers" [2].

The proper filing fee having been paid, it was directed that process issue in an order dated September 27, 2000. (Doc. No. 3).

On October 20, 2000, the defendants filed a motion to dismiss the plaintiff's complaint, along with a brief in support thereof. (Doc. Nos. 6 & 7). The plaintiff filed his brief in opposition to the defendants' motion on November 8, 2000. (Doc. No. 9). On January 24, 2001, the parties consented to proceed before a United States magistrate judge. (Doc. No. 11).

In his complaint, the plaintiff alleges the following:

On May 17, 2000, defendants Horn and Chesney authorized thirty (30) CERT officers to conduct "a live exhibition/exercise [3]" at SCI–Frackville within the Restricted Housing Unit, ("RHU"). With "invited civilians" looking on, the CERT officers forcefully extracted him from his cell and "carried/dragged" him to the RHU exercise area, where he was placed in a "cage" and left there with his hands cuffed behind his back. Approximately twenty (20) CERT officers, fully equipped with assorted weapons, were lined up against the wall in the exercise area, causing him to become fearful and emotionally distressed.

Approximately thirty (30) to forty-five (45) minutes later, he was again "carried/dragged" back to the RHU, uncuffed, strip-searched, re-cuffed and put back into his cell. As he was being taken from the exercise area the CERT officers "abruptly shoved [him] into a secluded doorway, and with their hands on the back of his head, mashed his face into its corner while screaming at [him] not to turn around ..." During this time, the CERT officers were waiting for two (2) other inmates who were being strip-searched ahead of him.

In addition, the plaintiff alleges that he was repeatedly cuffed and uncuffed and that his arms were repeatedly twisted behind his back by CERT officers, causing him "severe pain" which constituted excessive force in violation of the Eighth Amendment. He suffered "humiliation and emotional distress" as a result of the strip search and the CERT officers violated his Fourth Amendment right to privacy by conducting the procedure in front of others. Finally, he alleges that defendants Horn and Chesney are liable for failing to adequately supervise and/or train the CERT officers. (Doc. No. 1, Attached Statement of Claims).

1. Plaintiff is currently incarcerated at SCI–Greene, Waynesburg, Pennsylvania. (*See* Doc. No. 4).

2. CERT is an acronym for Corrections Emergency Response Team.

3. While plaintiff has characterized the activity as a "live exhibition/exercise", it appears to actually have been an "emergency preparedness drill involving an RHU fire drill evacuation." (Doc. No. 7, p. 1).

The plaintiff is seeking injunctive relief, as well as compensatory and punitive damages. (*Id.*)."

■ Generally speaking, federal court jurisdiction is limited to actual cases and controversies in which a plaintiff has a personal stake in the outcome. *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Further, the case or controversy must be a continuing one and must be live at all stages of the proceedings. *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir.1981). Since the plaintiff has been transferred from SCI–Frackville to SCI–Greene, he is no longer subject to forced participation in the RHU's emergency preparedness and fire evacuation drills. As a result of his transfer, plaintiff no longer has standing to seek injunctive relief. That claim is moot. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Abdul–Akbar v. Watson*, 4 F.3d 195, 206–207 (3d Cir.1993); *Gibbs v. Wadsworth*, 919 F.2d 731 (3d Cir.1990) (Table); and, *Weaver v. Wilcox*, 650 F.2d 22, 26–27 (3d Cir.1981).

To the extent that the plaintiff is alleging an Eighth Amendment excessive force claim, in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court held that "whenever prison officials stand accused of using excessive physical force ... the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7, 112 S.Ct. 995. In reaching this conclusion, the Court specifically rejected a "deliberate indifference" standard for judging claims of excessive use of force, finding that standard inappropriate when corrections officials must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* at 6, 112 S.Ct. 995

(quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■ Consistent with this standard, not all tortious conduct which occurs in prison rises to the level of an Eighth Amendment violation. *See Howell v. Cataldi*, 464 F.2d 272, 277 (3d Cir.1972) (Not all tortious conduct redressable under state law constitutes cruel and unusual punishment). "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. at 327, 106 S.Ct. 1078).

■ While an inmate need not suffer serious injuries to set forth a claim of excessive force, the extent of an injury suffered is a factor that may be considered in determining whether the use of force is excessive. *Hudson*, 503 U.S. at 9, 112 S.Ct. 995. In addition, courts considering claims of excessive force have generally held that a single, isolated incident does not rise to the level of a constitutional violation. *See e.g., Norman v. Taylor*, 25 F.3d 1259, 1262–64 (4th Cir.1994); *White v. Holmes*, 21 F.3d 277, 280–81 (8th Cir. 1994); *Black Spotted Horse v. Else*, 767 F.2d 516 (8th Cir.1985); *Ricketts v. Derello*, 574 F.Supp. 645 (E.D.Pa.1983).

■ With respect to the instant action, it cannot be said that the actions taken by the CERT officers rise to the level of a constitutional violation. The fact that the

plaintiff was handcuffed, removed from his cell, forcefully taken to a temporary holding cell for a short period of time, returned to the RHU, strip-searched and returned to his cell, all in conjunction with the execution of "an emergency preparedness drill involving an RHU fire-drill evacuation", are not the types of conditions which rise to the level of an Eighth Amendment violation. Moreover, despite the fact that the plaintiff alleges that he suffered "severe pain" as a result of the actions of the CERT officers, there is no indication that he suffered *any* actual injuries during this emergency preparedness and evacuation fire drill.

Taking all plaintiff's allegations as true, it cannot be said that the actions of the CERT officers rose to the level of a constitutional violation. Instead, at best, the plaintiff has shown only a *de minimus* use of force by the CERT officers. As a result, the defendants' motion to dismiss will be granted with respect to this claim. See *Hudson,* supra.

Next, the plaintiff claims he is entitled to damages because he suffered "humiliation and emotional distress" as a result of this emergency preparedness and evacuation fire drill. Section 803(e) of the Prison Litigation Reform Act of 1995, Pub.L.No. 104–134, 110 Stat. 1321 (April 26, 1996), codified at 42 U.S.C. § 1997e(e), provides that "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody, without a prior showing of physical injury."

While we are unable to locate a Third Circuit decision on point, that court has addressed the application of § 1997e(e) to an analogous First Amendment claim. In *Allah v. Al–Hafeez,* 226 F.3d 247 (3d Cir. 2000), the Third Circuit distinguished between claims for compensatory and nomi-

nal damages, noting compensatory damages are governed by general tort-law. In a § 1983 action damages "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment to reputation ..., personal humiliation, and mental anguish and suffering.'" *Allah* at 250 (quoting *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (citations omitted)).

However, the court noted in *Allah* that the Supreme Court has held that substantial damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right. The Third Circuit found in *Allah* that § 1997e(e) barred any claim by the plaintiff for compensatory damages because no physical injury was alleged, based upon a violation of his constitutional rights, *Id.* at 250–51.

█ *Allah,* however, did not bar all claims for damages. Certain absolute constitutional rights may be vindicated by an award of nominal damages, even in the absence of any showing of injury justifying compensatory damages. *Allah* at 251. See *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (approving recovery of nominal damages without proof of actual injury); See also *Stachura,* 477 U.S. at 308 n. 11, 106 S.Ct. 2537. As such, the Third Circuit found that a claim for nominal damages is not be barred by § 1997e(e). The instant action, however, is distinguishable from *Allah,* in that the court finds that the plaintiff has failed to sufficiently allege any violation of his constitutional rights. As such, the plaintiff cannot recover damages, nominal or otherwise, for his alleged "emotional distress".

█ Moving on to the plaintiff's Fourth Amendment claim, it is well-settled that inmates do not have a reasonable

expectation of privacy in their cells enabling them to invoke Fourth Amendment protections. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Inmates also do not have a Fourth Amendment right to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Wilson v. Shannon*, 982 F.Supp. 337 (E.D.Pa.1997). The reasonableness of inmate searches is determined by balancing "the need for the particular search against the invasion of the personal rights that the search entails." *Bell, supra.* Several courts have found that strip searches of inmates upon leaving and returning to a segregated unit is constitutionally permissible. *Goff v. Nix*, 803 F.2d 358 (8th Cir.1986); *Arruda v. Fair*, 710 F.2d 886 (1st Cir.1983); *Campbell v. Miller*, 787 F.2d 217 (7th Cir. 1986).

■ With respect to the instant action, any inconvenience caused to the plaintiff by the emergency preparedness and fire evacuation drill is offset by the need of prison officials and CERT officers to secure the safety and security of the institution. As such, the defendants' motion to dismiss the plaintiff's complaint will be granted with respect to the plaintiff's Fourth Amendment claim.

■ In addition, relief cannot be granted against a defendant in a civil rights action based solely on a theory of *respondeat superior* or the fact that the defendant was the supervisor or superior of the person whose conduct actually deprived the plaintiff of one of his federally protected rights under color of state law. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976); *Goode v. Rizzo*, 506 F.2d 542, 550 (3d Cir.1974), *rev'd on other grounds, Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Thus, to the extent that the plaintiff is attempting to hold either defendant Martin F. Horn, Secretary of the Department of Corrections, or Joseph Chesney, Warden of the State Correctional Institute at Frackville, liable on a theory of *respondeat superior*, the defendants' motion to dismiss will be granted.

■ Finally, to the extent that the plaintiff is alleging that these defendants failed to protect him from a risk of harm, prison officials may only be liable for failing to protect an inmate if the plaintiff shows some pervasive risk of serious harm, and that prison officials displayed deliberate indifference to the danger. *See Riley v. Jeffes*, 777 F.2d 143 (3d Cir.1985). In order to show deliberate indifference the plaintiff would need to establish that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm to the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials can only be found liable for such violations where that "official knows of and disregards an excessive risk of harm to inmate ... safety ... [and] the official [is] both ... aware of facts from which the inference could be drawn that a substantial risk of harm exists, and ... also draw[s] the inference." *Id.* at 837, 114 S.Ct. 1970. The requirement that the prison official must have had actual knowledge of the harm ensures that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Jensen v. Clarke*, 94 F.3d 1191 (8th Cir.1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

In this case, the plaintiff alleges that defendants Horn and Chesney were aware of and, in fact, authorized the emergency preparedness and fire evacuation drill. Even assuming this to be true, however,

there is no indication from the pleadings that the plaintiff was subject to a "pervasive risk of serious harm" with respect to the above mentioned drill. To the contrary, common sense tells us that these activities are appropriately devised to protect this and other inmates in time of actual emergency.

Thus, the plaintiff has failed to establish that defendants Horn and Chesney were deliberately indifferent to a "pervasive risk of serious harm." The defendants' motion to dismiss will be granted with respect to this claim.

On the basis of the foregoing, an appropriate order shall issue.