William Oscar HAMPTON

v.

HOLMESBURG PRISON OFFICIALS.

Appeal of Richard BURK et al.

No. 75–2434.

United States Court of Appeals, Third Circuit.

Argued Sept. 9, 1976.

Decided Dec. 28, 1976.

Sheldon L. Albert, Stephen Arinson, Raymond Kitty, James M. Penny, Jr., Ralph J. Teti, Sols. for the City, Philadelphia, Pa., for appellants.

Robert J. Donaghy, Ms. Denise Goren, Student Attys., Jack J. Levine, Supervising Atty., Civil Rights for Inmates, Temple Law School, Philadelphia, Pa., for appellee.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The distinction between conduct necessary to support recovery under 42 U.S.C. § 1983 and that establishing liability under state tort law is at issue in this appeal. The district court awarded damages to a prisoner against a warden and guards because of their failure to provide medical care. Our examination of the record demonstrates that the plaintiff failed to prove the intentional conduct characterizing a constitutional infringement. Accordingly, we vacate the judgment of the district court.

Several inmates assaulted plaintiff, a federal pretrial detainee at Holmesburg Prison in Philadelphia in 1974. He brought this action in the district court, grounding his 42 U.S.C. § 1983 and a pendent state law cause of action on allegations that the warden and guard defendants failed to protect him from attack and thereafter denied him medical care for six days. After a non-jury trial, the district judge found that the officials had exercised reasonable care in protecting plaintiff from the other inmates and, consequently, found no constitutional violation on the assault count. However, the court determined that plaintiff had been denied medical care and awarded compensatory damages in the amount of $1,000.00.

In the assault, which occurred on October 10, 1974, the plaintiff suffered injuries to his jaw, head, face and right hand. Although guards arrived on the scene within minutes after the incident, Hampton did not ask for any medical attention until two days later, when he spoke to defendants Mayo and Penbrock, the officers then on duty.

Plaintiff testified that he put out sick call slips on October 13 but did not see any medical personnel in the next five days. He said that the doctor determined which inmates he would see. On the 18th of October, Hampton saw the prison nurse and showed her his injuries. She told him the doctor would be in the following day, but it was not until October 20 that Dr. Westby examined plaintiff and prescribed aspirin. On October 24, plaintiff complained to the doctor that aspirin was not effective. Four days later, he was taken to Philadelphia General Hospital for out-patient treatment.

According to the warden's testimony, a prisoner going on routine sick call was to notify his block officer at 8:30 in the morning. However, a doctor was not available every day and occasionally there could be as much as a three-day interval between visits by the physician. In emergency situations, however, prisoners were taken to specified hospitals in the area.

The district judge found:

"There is ample evidence to indicate that Hampton reported for sick call. There is no testimony to establish that the guards forwarded his request nor is there evidence that Burk [the warden] was unaware of Hampton's request. The record will not support an assumption that the guards carried out their obligation to report or that Burk undertook his obligation to provide medical treatment. We believe that the totality of the circumstances supports a conclusion that entitles Hampton to compensatory damages to be assessed against Warden Burk and Guards Mayo and Penbrock.

". . . From October 12th to October 18th medical treatment was denied. We believe it is proper to assume that plaintiff suffered some pain and discomfort during this period of time. We are unable to state with any degree of certainty that immediate medical treatment would have ameliorated the pain but we do think compensation is payable for the failure to provide an opportunity to a doctor to attempt to alleviate the pain. Perhaps medication would have been helpful."

The court did not address plaintiff's pendent state law claims.

█ The plaintiff bases his claim under 42 U.S.C. § 1983 upon his assertion that the denial of medical treatment amounted to cruel and unusual punishment. It is questionable whether the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to a pretrial detainee, the most accepted view being that the amendment's proscription applies only after conviction. See the discussion in *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Anderson v. Nosser,* 456 F.2d 835 (5th Cir. en banc), *cert. denied,* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); *cf. Howell v. Cataldi,* 464 F.2d 272 (3d Cir. 1972). But this does not mean there is no constitutional protection for a pretrial detainee. It would be anomalous to afford a pretrial detainee less constitutional protec-

tion than one who has been convicted. *United States ex rel. Tyrrell v. Speaker,* 535 F.2d 823 (3d Cir. 1976); *Johnson v. Glick, supra;* Note, *Constitutional Limitations on the Conditions of Pretrial Detention,* 79 Yale L.J. 941 (1970). The source of that protection is properly found in the Due Process or, in some instances, the Equal Protection Clause,[1] *See Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Tyrrell v. Speaker, supra; Rhem v. Malcolm, supra; Johnson v. Glick, supra; Anderson v. Nosser, supra,* with decisions interpreting the Cruel and Unusual Punishment Clause serving as useful analogies. *Duran v. Elrod,* 542 F.2d 998 (7th Cir. 1976). However, we do not think it appropriate to discuss the precise source of the right because, while it may have significance in other contexts, it is not controlling here. The facts mandate a finding that there has been no constitutional deprivation, whatever the derivation.

In *Estelle v. Gamble,* —— U.S. ——, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court distinguished medical malpractice cases cognizable under state tort law and those rising to the level of a constitutional abridgement. After discussing the government's obligation to furnish medical service to prisoners, the Court articulated the standard for determining whether a constitutional violation had occurred:

"We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia,* [428 U.S. 153] *supra* at [173], [96

S.Ct. [2909] at 2925, 50 L.Ed.2d 859] proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

"This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.

\*      \*      \*      \*      \*      \*

"Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute a 'wanton infliction of unnecessary pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." —— U.S. at ——, 97 S.Ct. at 291 (footnotes omitted)

The Court's newly announced standard is in agreement with the line of cases in this circuit, *see Fischer v. Cahill,* 474 F.2d 991 (3d Cir. 1973); *Nettles v. Rundle,* 453 F.2d

---

1. We note that some courts have apparently relied upon the "presumption of innocence" in cases involving pretrial detainees. However, we do not believe that principle serves as the source for those substantive rights. Rather, the presumption allocates the burden of proof. It is a principle of evidence, 9 J. Wigmore, Evidence § 2511 (3d ed. 1940), acting as the foundation for the procedural due process requirement of proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Leland v. Oregon,* 343 U.S. 790, 802–803, 72 S.Ct. 1002, 96 L.Ed.

1302 (1952) (Frankfurter, J., dissenting). If the "presumption of innocence" is read literally to apply to all pretrial procedures, it is impossible to justify bail or pretrial detention, both of which are restraints imposed upon an accused despite the presumption. Therefore, we believe that pretrial detainees must look to the Due Process or Equal Protection Clauses for their rights. For an interesting discussion of the history of the presumption of innocence, *see Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

889 (3d Cir. 1971); *Kontos v. Prasse,* 444 F.2d 166 (3d Cir. 1971); *Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir. 1970); *Fear v. Commonwealth,* 413 F.2d 88 (3d Cir.), *cert. denied,* 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969). Indeed, as the Court noted in its opinion, all the courts of appeals are in essential agreement with this standard.

■ To establish a constitutional violation, the indifference must be deliberate and the actions intentional. Moreover, not every injury or illness invokes the constitutional protection—only those that are "serious" have that effect. Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts.[2]

■ A careful review of the record in the case before us reveals no evidence satisfying the constitutional standard. The district court found that "[f]rom October 12th to October 18th medical treatment was denied," and that "[o]n or about October 12, plaintiff informed guards Mayo and Penbrock of his injuries and requested medical attention. Several times thereafter, plaintiff made sick call requests to Mayo and Penbrock for a doctor." Although "[t]here was no medical evidence to establish the extent or severity of the plaintiff's injuries," he testified that he sustained obvious injuries.[3]

Plaintiff testified that the first request was made on October 12 when he told guard Mayo that he needed to see a doctor. Mayo replied that the doctor was not at the prison and that he did not know when the physician would be in. On the following day, plaintiff put in a "sick call slip which Mr. Watts they [sic] signed and sent it over to the center. That night I am supposed to see a doctor and I don't. The next day I put one in again and I don't see the doctor . . .. They said there was no doctor. When the doctor is there he doesn't see everybody. He sees who he wants to see. I asked Mr. Watts again, and he writes out a pass so I can see the nurse. . . ."

Another inmate's deposition stated that the plaintiff, a day or two after the incident, asked for and received a pass from a guard to see the doctor. However, the physician did not see the plaintiff on that occasion.

The record thus fails to support the charge that the guards deliberately or intentionally prevented the plaintiff from receiving medical treatment. Moreover, plaintiff's evidence does not show that the guards prevented the sick call slip from proceeding through established channels. To the contrary, on at least one occasion the plaintiff admitted that the slip was processed in normal fashion. The testimony does show that for some unexplained reason the visiting doctor failed to examine the plaintiff. At most, a pattern of neglect in providing prompt medical attendance emerges which could perhaps establish tort liability on someone, not necessarily the defendant guards. It was the plaintiff's burden to produce medical testimony that his complaints were capable of remedy by treatment that he did not receive. He failed to prove the intentional conduct or

---

**2.** As *Blackstone* stated:

"But this imprisonment, as has been said, is only for safe custody, and not for punishment: therefore, in this dubious interval between the commitment and trial, a prisoner ought to be used with the utmost humanity, and neither be loaded with needless fetters, or subjected to other hardships than such as are absolutely requisite for the purpose of confinement only . . .." 4 W. Blackstone, Commentaries *300.

Moreover, we note that Pa.Stat.Ann. Title 61 § 626 requires the superintendent to visit each cell at least twice a week and § 628 states that the "keepers" are to give notice to the superintendent when a person confined requires medical treatment. Section 629 directs the jail physician to visit the institution daily and prescribe for the sick.

**3.** "Cuts and bruises to my face, lacerations around my neck and chest, and I had a swollen hand which was kicked, and I had what the doctor calls a thristmas to my jaw, which is a muscle spasm.

"Q. Any other injuries?
"A. It developed afterwards. I have an eye pain.
"Q. Were these injuries painful to you?
"A. Very painful.
"Q. How long did the injuries persist?
"A. Until they took me to PGH."

deliberate indifference on the part of defendants necessary to sustain the charge of constitutional infringement.

▐▐▐ We need not dwell at length upon the lack of derivative liability of the warden. Even if liability had been established against the guards, there is not the slightest evidence showing that the warden had actual knowledge of the unanswered request for medical attention or that he acquiesced or participated in any denial. Moreover, in § 1983 suits liability may not be imposed on the traditional standards of *respondeat superior. Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); see *Bracey v. Grenoble,* 494 F.2d 566 (3d Cir. 1974). In *Estelle v. Gamble, supra,* the Court remanded for further consideration of the potential liability of a warden and other prison officials. That case, however, decided only on the allegations in the complaint, contained assertions that the officials interfered with the plaintiff's proper medical care. *See also Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). Those circumstances are not present here, and the facts as determined by the trial do not support a finding of liability upon the warden.

▐▐ Plaintiff urges as an alternative that he should be entitled to recover as a third party beneficiary to the contract between the United States and Philadelphia. This agreement had been negotiated by the Department of Justice pursuant to the authority granted by 18 U.S.C. § 4002 to provide for the care and custody of federal prisoners by a municipality. It has been held that the statute and the regulations implementing it do not give rise to a private cause of action in either federal or state courts. *See Williams v. United States,* 405 F.2d 951 (9th Cir. 1969); *Johnson v. Lark,* 365 F.Supp. 289 (E.D.Mo.1973).

▐▐ If a cause of action does exist, therefore, it is derived from general principles of contract law. Whether federal or state law applies in that instance was not decided in the district court nor briefed on appeal. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); *United States v. County of Allegheny,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *Miree v. United States,* 538 F.2d 643 (5th Cir. 1976) (en banc), *rev'g* 526 F.2d 679 (5th Cir. 1976), *petition for cert. filed,* 45 U.S. L.W. 3402 (U.S. Oct. 30, 1976) (No. 76–607). *Cf. Bank of America v. Parnell,* 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 19, n.17 (3d Cir. 1975); *Johnson v. Lark, supra; Blair v. Anderson,* 325 A.2d 94 (Del.1974). If state law governs performance of the contract, there would be no basis for jurisdiction over the city since it cannot be sued under § 1983 and, accordingly, cannot be joined on the theory of pendent jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). On the other hand, if the district court determines that federal law governs the contract in these circumstances, and if it finds that the requisite amount in controversy existed at the time the complaint was filed naming the city, jurisdiction would attach under 28 U.S.C. § 1331.[4]

The entry of judgment in favor of the plaintiff on his § 1983 claim will be vacated and the matter will be remanded to the district court for further proceedings consistent with this opinion.

---

4. The warden and guards were not parties to the contract between the United States and Philadelphia. Under Pennsylvania law, generally a person not a party to the contract cannot be liable for a breach. *Allen Organ Co. v. North American Rockwell Corp.,* 363 F.Supp. 1117, 1130 (E.D.Pa.1973); *Roman Mosaic and Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 313 A.2d 305, 307 (1973); *Wolff v. Wilson,* 28 Pa. Super. 511, 515 (1905). However, we believe that this issue, as well as possible applicability of this principle in federal common law, should be decided in the first instance by the district court and, accordingly, we do not reach it here. *See Miree v. United States, supra.*