**Trina GARNETT, by Walter Garnett, her father and natural guardian, and in her own right, Plaintiff,**

v.

**Nile KEPNER, individually and in his official capacity as agent of State Correctional Institution at Muncy, et al., Defendants.**

Civ. A. No. 79–0034.

United States District Court, M. D. Pennsylvania.

May 17, 1982.

Spero T. Lappas, Harrisburg, Pa., for plaintiff.

Francis R. Filipi, Asst. Atty. Gen., Harrisburg, Pa., for Lightcap.

Ambrose R. Campana, Williamsport, Pa., for Kepner.

## MEMORANDUM

RAMBO, District Judge.

Plaintiff, an inmate at the State Correctional Institution at Muncy, Pennsylvania (SCIM), had sexual relations with an employee of the prison and became pregnant. Initially she sued a number of present and former state employees under the Civil Rights Act, 42 U.S.C. § 1983. All but two of the defendants prevailed on pretrial motions to dismiss or for summary judgment. The two who remained to defend at trial were Nile Kepner, a former employee at Muncy who was in charge of the work detail to which plaintiff was assigned, and Gerald Lightcap, Superintendent of SCIM at the time the acts of sexual intercourse occurred.

Defendant Kepner admitted that he participated in two acts of sexual intercourse with the plaintiff. The dispute between them centered on whether the acts were the result of coercion, as plaintiff claimed, or were consensual.

The court ordered separate consideration of the issues of defendant Kepner's liability, defendant Lightcap's liability and damages. The jury found that Kepner had violated plaintiff's constitutional rights. It awarded compensatory and punitive damages against him. Defendant Lightcap was exonerated of any liability to plaintiff.

Nile Kepner has moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Plaintiff seeks a new trial against Gerald Lightcap.

### Defendant Kepner's Post Trial Motion

Defendant Kepner argues that the court erred in the following respects:

A. Denying defendant's motion for a directed verdict;

B. Refusing to allow evidence of plaintiff's criminal convictions;

C. Failing to instruct the jury, at the end of the first stage of the trial, as requested by defendant *Lightcap's* points for charge numbered 7, 10 and 11.[1]

He further contends that the jury's award of damages was excessive.

 A defendant is entitled to a directed verdict or to a grant of judgment notwithstanding the verdict only if, as a matter of law, the plaintiff has failed to present a case for the jury. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir. 1970). Neither would be appropriate in this instance. Plaintiff testified in her case that she was forced into having sexual intercourse with Nile Kepner by repeated threats that he would take disciplinary action against her. Although she had, under oath, told a conflicting version of the events at a prior judicial proceeding, it was the province of the jury, not the court, to determine which of plaintiff's statements, or that of defendant, it believed. Based on plaintiff's testimony there was a case presented for the jury to consider.

 The court does not find the jury's award of damages excessive. The jury awarded $42,000.00 in compensatory damages and $20,000.00 in punitive damages against defendant Kepner. A court may set aside a verdict if it is the result of passion, bias or prejudice or if it is grossly excessive. 6A Moore Federal Practice ¶ 59.05[3]. Plaintiff testified to discomfort and humiliation at the time of the acts of intercourse. She also claimed that she has nightmares and is sexually ambivalent in her feelings toward men since her experiences with defendant Kepner. There was evidence that she named Kepner as the father of the child which she bore. Plaintiff was in her late teens at the time of the acts in question. She stated that she was a

---

1. Defendant Kepner's attorney joined in Lightcap's requested points for charge. It is not clear that he also joined in Lightcap's exceptions to the charge. However, because the court believes defendant Kepner must be granted a new trial, it is unnecessary to rule on this issue. Kepner will have another opportunity to present points for charge and take exceptions to the charge.

virgin. In light of these facts, an award totalling $62,000.00 is not disproportionate.

At trial the court refused to permit the defendants to cross-examine plaintiff regarding the crimes for which she was incarcerated. Plaintiff had been convicted of two counts of murder in the second degree, burglary, arson, recklessly endangering another person, and risking and causing a catastrophe. The court believed that there was a danger of prejudice to the plaintiff from the admission of evidence of these crimes which was not outweighed by the probative value of the evidence. The jury knew that plaintiff was convicted of a crime and was serving time for the conviction. There was substantial impeachment in the record. Plaintiff's crimes were essentially ones of passion and violence which have low probative value on the issue of credibility. *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967). Balancing these factors, the court excluded the evidence.

■ Post-trial briefing on this issue has convinced the court that it was error to consider the prejudice to a *plaintiff* resulting from the admission of evidence of prior crimes. The pertinent part of Federal Rule of Evidence 609 provides:

(a) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the *defendant*, . . . (Emphasis supplied.)

Debate over F.R.Ev. 609, and particularly paragraph "a", was heated and extensive in both houses of Congress.[2] The House and Senate passed differing versions of the rule. The present rule is a compromise which emerged from the Conference Committee.

The Committee issued a joint statement giving the following explanation:

With regard to the discretionary standard established by Paragraph (1) of Rule 609(a), the Conference determined that the prejudicial effect to be weighed against the probative value of the conviction is specifically the prejudicial effect *to the defendant.* The danger of prejudice to a witness other than the defendant (such as injury to the witness's reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior record. (Emphasis in original.) Conference Report. H.Rept.No. 93–1597, reprinted at Congressional Record, H 11930–11931 (daily ed. Dec. 14, 1974), U.S.Code Cong. & Admin.News 1974, p. 7051, 7103.

Plaintiff, in attempting to discredit the legislative history cited by defendant Kepner, has quoted in her brief from a report of the Senate Judiciary Committee. However, that report applies to a proposed version of the rule which did not succeed in the Senate.

Garnett argues that despite Rule 609(a) the court has discretion under F.R.Ev. 403 to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. This proposition ignores the usual rule of statutory construction that, in cases of conflict, general provisions must yield to more specific provisions. Congress wrestled with the problems raised by the use of prior convictions. The tension, evident from a

**2.** A brief history of the controversy and highlights of the legislative debates is found in 3, J. Weinstein and M. Berger, *Weinstein's Evidence*, pp. 609–2—609–38 (1981).

reading of the history and debate, was between a blanket use of all felony convictions against all witnesses and the need to protect defendants from the possibility that they would be convicted on the basis of their prior crimes. Congress made a specific decision on this controversial issue. It is not the province of the courts to override that judgment by invoking a general rule of evidence which embodies conflicting points of view considered and resolved by Congress in the context of the credibility issue. See *United States v. Nevitt*, 563 F.2d 406, 409 (9th Cir. 1977); *United States v. Martin*, 562 F.2d 673, 680–81 n. 16 (D.C.Cir. 1977).

The court has considered whether this evidentiary error is "harmless" error within the meaning of Federal Rule of Civil Procedure 61. That rule instructs:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Plaintiff was extensively impeached by prior sworn testimony. The jury apparently believed her story in spite of the obvious contradictions in various recitals of the incidents. Plaintiff's earlier inconsistent statements made no claim that she was coerced into participation in the sexual acts. She explained that she did not reveal all the facts of the incidents at the time her pregnancy was discovered, and shortly thereafter, because she feared retaliation from other prison employees if she made accusations against Kepner. Plaintiff's youth and her subdued appearance in court may have convinced the jury that she did indeed fear harm. Evidence of her prior crimes may have changed the jury's evaluation of her

truthfulness. Credibility was all important in this case because there were no witnesses to the incidents. Under the circumstances the court finds the omission was not harmless error. It will grant a new trial to defendant Kepner.

Plaintiff's Motion for a New Trial against Defendant Lightcap

A. Rejected Points for Charge in the Kepner Phase of Trial

■ Plaintiff seeks a new trial against Superintendent Lightcap for several reasons. First, plaintiff raises the court's refusal to give three jury instructions requested during the liability phase of the trial against Nile Kepner.

The instructions at issue are:

(1) The Constitution of the United States protects Trina Garnett's right to be free from unwarranted or *unlawful assaults* while she is an inmate in a state prison. If you find that Mr. Kepner *assaulted* Miss Garnett, while she was an inmate at State Correctional Institution, Muncy, then you must find that Kepner violated Miss Garnett's constitutional rights.

(2) The United States Constitution protects Miss Garnett's right to be free from unlawful invasions of her sexual privacy. If you find that Mr. Kepner engaged in sexual intercourse with Trina Garnett and that the sexual intercourse was the result of threats, coercion or duress employed by Mr. Kepner, or the result of physical force, then you must find that Mr. Kepner violated Miss Garnett's constitutional rights.

(5) The law provides that no one should be punished, or threatened with punishment, for exercising or attempting to exercise a constitutional right. If you find that Mr. Kepner threatened Trina Garnett with punishment if she exercised her constitutional right to sexual privacy, or her constitutional right to be free from sexual or *physical assaults*, then you must conclude that Mr. Kepner violated Miss Garnett's constitutional rights and return a verdict in favor of the plaintiff. (Emphasis supplied.)

Instructions one and five were erroneous in that they would have permitted the jury to find liability against Kepner on the basis of a simple assault. Not all assaults rise to the level of a constitutional violation.

Instruction two reflects plaintiff's continuing argument that plaintiff had a constitutional right to sexual privacy separate from her right to be free from cruel and unusual punishment, protected by the Eighth and Fourteenth Amendments to the Constitution. Plaintiff has never articulated the source of this right, she merely relies on *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Both of those cases are considerably different because they deal with state statutes, not the individual acts of state employees. Nor does either case address the issue of nonconsensual sexual intercourse.

Plaintiff was presenting an alternate theory of liability against defendant Kepner in case the jury did not find that his conduct amounted to an Eighth Amendment violation. Since the jury did find an Eighth Amendment violation, whether they might also have found a violation based upon an alternative constitutional theory is irrelevant to the question of defendant Lightcap's liability. Given the constitutional wrong, the question in the second phase of the trial was whether Lightcap could be said to have participated or acquiesced in the wrong. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).

## B. Negligence in a § 1983 Action

In the Lightcap phase of the trial plaintiff sought to have the court charge the jury in these words:

If you conclude from the evidence that the Defendant Gerald Lightcap caused Trina Garnett to be subjected to Nile Kepner's violations of her constitutional rights by his (Lightcap's) *negligence, inadvertence, lack of due care, or inatten-*

*tion to his duties*, then you must conclude that the Defendant Gerald Lightcap is also liable to Trina Garnett for a violation of her constitutional rights to be free [from] cruel and unusual punishment. (Emphasis supplied.)

It is plaintiff's contention that simple negligence is sufficient for the liability of a superior in a § 1983 action. In fact plaintiff argues: "[A] legion of cases, and the very history of 1983 litigation demand recovery for negligence." This assertion is doubtful. Justice Rehnquist in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), acknowledged that § 1983 liability for negligence is an open question when he said: "While we have twice granted certiorari in cases to decide whether mere negligence will support a claim for relief under § 1983 . . . we have in each of those cases found it unnecessary to decide the issue." *Id.* 532, 101 S.Ct. 1911. Justice Powell in a concurring opinion, addressing the history of § 1983, wrote:

That provision [§ 1983] was enacted to deter real *abuses* by state officials in the exercise of governmental powers. It would make no sense to open the federal courts to lawsuits where there has been no affirmative abuse of power, merely a negligence deed by one who happens to be acting under color of state law. (Emphasis in original.) *Id.* 549, 101 S.Ct. 1920.

Chief Justice Burger expressed his view as follows in his dissent[3] from the majority opinion in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978):

Neither the language nor the legislative history of § 1983 indicates that Congress intended to provide remedies for negligent acts.

I would hold that one who does not intend to cause and does not exhibit deliberate indifference to the risk of causing the harm that gives rise to a constitutional claim is not liable for damages under § 1983. *Id.* 568, 98 S.Ct. 863.

**3.** In the dissent he laments that the Court failed to decide the question upon which certiorari was granted, whether a negligent act states a

cause of action under § 1983. *Procunier*, 566–567, 98 S.Ct. 862.

The views of Justices Burger and Powell are supported by the legislative history of § 1983 discussed in an earlier Supreme Court decision, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In that opinion the Court noted: "Section 1979 [§ 1983] came onto the books as § 1 of the Ku Klux Act of April 20, 1871, 17 Stat. 13." *Id.* 171, 81 S.Ct. 475. Those with even a rudimentary knowledge of United States' history are aware that the Klan is not noted for its acts of negligence, but rather for various forms of deliberate violence and intimidation. Because the § 1983 legislation was enacted against this background the Court held:

> The question with which we now deal is the narrower one of whether Congress, in enacting § 1979 [§ 1983], meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's *abuse* of his position. We conclude that it did so intend. (Emphasis supplied.) (Citations omitted.) *Id.* 172, 81 S.Ct. 476.

Though *Monroe v. Pape* contains language, oft-quoted by those urging a § 1983 remedy for negligence, stating that the statute "should be read against the background of tort liability,"[4] the Court made no distinction in its discussion between negligent and intentional torts. The portion of the opinion in which that quote appears deals with whether a plaintiff need prove that a defendant acted with the specific intent, in the criminal sense, to cause a constitutional deprivation. The Court determined that a plaintiff need not prove specific intent. The reference to tort liability must be read in light of the earlier statement in *Monroe* that Congress intended a remedy for "an official's abuse of his position."

Whether the Court of Appeals for the Third Circuit requires proof of something more than simple negligence to establish liability for a § 1983 claim is unclear. The case cited by plaintiff, *Howell v. Cataldi*, 464 F.2d 272 (3d Cir. 1972), contains the following dictum:

Thus, although proof of specific intent to deprive a person of his federally protected rights is not required, there must be at least proof of the "condition usually demanded by the law for liability in an action of tort [which] is the existence of either wrongful intention or culpable negligence on the part of the defendant." Salmond, Law of Torts, 6th Ed. 1924, p. 11. *Id.* 279.

The quoted statement makes no citation to any federal case law, nor is there any discussion of the meaning of "culpable negligence." The passage is gratuitous in that the conduct at issue in the Cataldi case, "smashing his [plaintiff's] head against the counter, hitting him on the head with a blackjack, banging his shins with a wooden club, kicking him,"[5] was intentional rather than negligent.

In the case before this court plaintiff seeks to have a simple negligence standard applied to a superior. At trial there was no proof offered that Gerald Lightcap had knowledge of a sexual liaison between Kepner and Garnett prior to the time Garnett's pregnancy was discovered and she identified Kepner as the responsible party. Then Lightcap acted to have Kepner discharged from his employment at Muncy. The only proof going to liability against Lightcap was the testimony of former inmate Pat Thomas that she and two other female inmates encountered Lightcap on the grounds at Muncy, prior to the time the sexual acts took place, and that she told Lightcap he should watch out for Trina because Nile Kepner was a sexually aggressive individual. Lightcap denied that this conversation ever took place. Even if the jury believed this testimony, and there was ample basis in the cross-examination for the jury to disregard it altogether, the court's charge would have permitted the jury to find Gerald Lightcap liable on the basis of the alleged conversation. The court included in its charge this instruction:

> To find a superior officer liable for a constitutional deprivation, you must find

---

**4.** Id. 187, 81 S.Ct. 484.

**5.** *Id.* 281.

that the superior had some personal responsibility for the deprivation. In other words, you must find that he participated in the deprivation or that he knew of the deprivation and acquiesced in it.

Personal responsibility may also be found if Gerald Lightcap kept in his employment personnel he knew would create a threat to constitutional rights or if he permitted conditions to persist which he knew created a threat to constitutional rights.

You may not find Gerald Lightcap liable for indifferences towards Plaintiff's constitutional rights unless you find that any indifference was deliberate and his actions were intentional.

You may not find Mr. Lightcap liable for a violation of Plaintiff's constitutional rights if you find that Gerald Lightcap's actions or inactions rise to a level no higher than simple negligence. And negligence is the failure to use reasonable care under the circumstances.

The instruction covered the only facts in plaintiff's case which demonstrated any culpability on the part of Superintendent Lightcap. It was in accord with the Third Circuit's standard for the liability of a superior officer. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). Further, it required the jury to find that the superintendent *abused* his office, a requisite this court believes is inherent in the history of the Civil Rights Act.

## C. Testimony of Jane Barilik

[8] At trial plaintiff wanted to call Jane Barilik, an inmate at Muncy, to testify. In an affidavit dated April 25, 1980, which was filed with the court in support of plaintiff's opposition to defendant Lightcap's motion for summary judgment, Jane Barilik had stated that Lightcap "repeatedly made physical and verbal advances of an intimate or sexual nature" toward her. Plaintiff believed Barilik's testimony would substantiate this statement and would demonstrate to the jury that Lightcap had reason to ignore conditions which might be conducive. to sexual abuse because he also wanted sexual relationships with the inmates in his charge.

When defendant Lightcap's attorney contacted Jane Barilik to inquire about the substance of her testimony she denied that she had ever made allegations about Lightcap's sexual advances and signed an affidavit to that effect. The conflicting affidavits raised the issue of whether Jane Barilik had any relevant testimony. Even before the conflicting statements surfaced the court was concerned with the tangential relevancy of Barilik's testimony and the danger of unfair prejudice to defendant Lightcap.

Before making a ruling on the admissibility of the proffered testimony, the court listened to Barilik's testimony and cross-examination in chambers. She denied ever having made the statements contained in the first affidavit. She admitted signing an affidavit, but claimed she did not know what it said. Her testimony was that Gerald Lightcap had never made any sexual overtures to her. Jane Barilik had no relevant evidence to offer and was not permitted to testify on the basis of Federal Rule of Evidence 402 which authorizes the exclusion of irrelevant evidence.

Plaintiff now argues:

The fact that Barilik may have testified in a manner inconsistent with Plaintiff's original expectations would not have precluded the Plaintiff from calling her and then impeaching her on her prior inconsistent statement. "The credibility of a witness may be attacked by any party, including the party calling him." F.R.E. 607. Plaintiff's Brief in Support of Motion for a New Trial, p. 12.

The problem with this argument is that it stops short of explaining how plaintiff intended to impeach this witness. Impeachment by a prior statement is limited by Federal Rule of Evidence 801(d)(1). The portion of that rule applicable here requires that the statement, to be admissible, be inconsistent *and* be "given under oath subject to the penalty of perjury at a *trial, hearing, or other proceeding, or in a deposition . . . .*" The first affidavit and the

hearsay testimony of investigator Gochenour as to what Barilik told him do not qualify as admissible impeachment.

There was no basis for considering Barilik a hostile witness thereby permitting plaintiff's counsel to ask her leading questions. Under the circumstance, the court can see no probative value to Barilik's testimony. It believes that the evidence was properly excluded.

### D. Limitation of Testimony

 Plaintiff asserts two final trial errors. In the Lightcap liability phase of the trial the court did not permit counsel for the plaintiff to question defendant Kepner about his knowledge of other staff-inmate sexual incidents at Muncy. Without any supporting argument or clarification of the facts, plaintiff's brief says: "This testimony shed light on his [Kepner's] willingness to victimize Trina Garnett with presumed impunity and was relevant to Defendant Lightcap's liability." The court has consistently failed to see how *Kepner's* knowledge of sexual incidents is relevant to *Lightcap's* liability. The issue during the Lightcap phase of the trial was whether the superintendent knew of sexual misconduct on the part of his staff and failed to correct the situation. Plaintiff does not contend that Kepner shared his knowledge of the staff-inmate sexual incidents with Lightcap. Thus the testimony was irrelevant to the issue of Lightcap's liability and was potentially prejudicial.

When Pat Thomas testified about her conversation with Gerald Lightcap during which she claimed to have warned him of Kepner's aggressive tendencies, plaintiff wanted to question her about what she had observed in Kepner's actions that led her to speak to Lightcap about him. The court limited the testimony to her statements of what she related to Lightcap. Plaintiff argues: "Without the witness' [Pat Thomas] testimony as to how she gained the information which she reported to Lightcap, the jury was free to disregard it as being contrived and false." The issue for the jury to determine was not whether the information Thomas gave Lightcap was true or not. It was whether Thomas told Lightcap what she claimed to have related. The truth or falsity of her statements was irrelevant to the issue of Lightcap's notice that Kepner was an individual who might pose a threat to inmates. Plaintiff does not contend that Thomas expanded her warning to Lightcap to include her observations of Kepner's behavior. The court found that whatever marginal relevance the proffered testimony might have had to support Thomas' credibility was outweighed by the danger of prejudice. The jury may have assumed that, if the instances Thomas testified about occurred, Lightcap would or should have known about them. However there was no evidence that he knew anything more than the warning Thomas claimed to have given.

The court finds no error in the Lightcap phase of the trial. Plaintiff's motion for a new trial against Gerald Lightcap will be denied.