**Thurman LEWIS, Petitioner-Appellee,**

v.

**Robert COOPER & Richard Mulherin, Respondents-Appellants.**

**No. 84–2081.**

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1985.

Decided Sept. 3, 1985.

Nancy E. Paridy, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for petitioner-appellee.

Thomas P. Marnell, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.

Before CUDAHY and COFFEY, Circuit Judges, and GARZA, Senior Circuit Judge.*

PER CURIAM.

This case involves a prison inmate's suit under 42 U.S.C. § 1983 against two prison guards. In the district court, a jury awarded inmate Thurmon Lewis ("Lewis") a total of $5500 in damages against prison guards Richard Mulherin ("Mulherin") and Robert Cooper ("Cooper") on the theory that they had subjected him to cruel and unusual punishment by failing to provide him with prompt medical care after he was assaulted by his cellmate. We conclude that the evidence is sufficient to support the jury's verdict, and that any defects in the jury charge were waived; consequently, we affirm.

On January 6, 1981, at approximately 11:00 p.m., Lewis, then an inmate at the Joliet Correctional Center in Joliet, Illinois, was assaulted by his cellmate, Richard Walton. Mulherin, a Correctional Sergeant at Joliet, had been advised that a fight was about to begin, and was standing outside of the cell shortly before the fight began. Despite Mulherin's presence outside the cell, Walton began to attack Lewis. Mulherin, however, was unable to enter the cell to break up the fight because he did not have the keys.

Using his radio, Mulherin contacted Cooper, a Correctional Lieutenant, and asked him to bring the keys. By the time Cooper showed up with the keys, a third guard, Officer West, had arrived on the scene. Cooper, Mulherin, and West were able to

---

* The Honorable Reynaldo G. Garza, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

restrain Walton and remove him from the cell. Lewis testified at trial that the assault lasted fifteen to twenty minutes, and that Walton had repeatedly hit him in the head with his fists and a sock containing a hard object. He also stated that Walton had knocked him to the ground, kicked him, and jumped on his left arm. Additionally, Lewis testified that he was bleeding from the nose, mouth, and back of the head as a result of the attack.

What happened following the fight was disputed at trial. Lewis testified that he asked for medical assistance as soon as Walton was removed from the cell. Cooper testified that he asked Lewis if he was all right, and that Lewis had responded, "I'm okay." Mulherin testified that he heard Lewis say he was all right, and that he did not see any cuts or bruises on Lewis. Eventually, both guards left the cell. Mulherin returned some thirty minutes later with a disciplinary report. Lewis testified that he was still bleeding "somewhat" at the time Mulherin returned. According to Lewis, he again requested to see a doctor when Mulherin returned with the disciplinary report. According to Mulherin, Lewis at no time requested to see a doctor.

Lewis did not receive medical treatment until sometime the following day, at which time he was examined by a nurse who gave him aspirin and hot compresses for his wrist. The nurse recommended that Lewis see a doctor to have x-rays taken. A day later, Lewis was examined by a doctor but was not x-rayed until he was transferred to the Stateville Correctional Center (where he is currently incarcerated) on January 28, 1981.

In 1982, Lewis brought suit under 42 U.S.C. § 1983 against various prison administrators and employees. Lewis alleged that the defendants had failed to protect him from being attacked by his cellmate, and that they had failed to provide him with adequate medical treatment following the attack. At the time of trial, four guards and one medical employee remained as defendants. The trial court directed verdicts in favor of all defendants except Mulherin and Cooper before the case was submitted to the jury. The court also directed a verdict in favor of Cooper and Mulherin on the failure to protect issue. Thus, the only issue determined by the jury was whether Mulherin and Cooper had been indifferent towards Lewis' medical needs after the fight. The jury answered this question in the affirmative, and awarded Lewis a total of $2000 in compensatory damages and $3500 in punitive damages. Cooper and Mulherin brought this appeal following the district court's refusal to grant a judgment notwithstanding the verdict.

■ In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court noted that a prison inmate's eighth amendment right to be free from cruel and unusual punishment can be violated where the prisoner is denied medical treatment. In order to recover money damages for such a violation under 42 U.S.C. § 1983, the prisoner is required to prove that the denial of medical treatment constituted a "deliberate indifference to serious medical needs." *Id.* at 104, 97 S.Ct. at 291. In response to a special interrogatory embracing this issue, the jury found that Cooper and Mulherin had been indifferent towards Lewis' serious medical needs following the attack.

■ Cooper and Mulherin challenge the sufficiency of the evidence supporting the jury's finding. This contention was presented to the district court in Cooper and Mulherin's motion for judgment notwithstanding the verdict. The motion was properly denied if " 'the evidence, along with the inferences to be drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions.' " *Freeman v. Franzen*, 695 F.2d 485, 488 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983) (citations omitted). Cooper and Mulherin contend that the evidence is insufficient to establish either seri-

ous medical need or deliberate indifference. We disagree.

Lewis testified concerning the injuries he sustained as a result of Walton's attack. Immediately following the assault, he had difficulty walking and was bleeding from the nose, mouth, and back of the head. He also testified that the fight had lasted fifteen to twenty minutes, that he had been hit in the head with a sock containing a hard object, and that Mulherin had witnessed a portion of the assault. Reasonable minds could clearly differ as to whether Lewis' description of his injuries created a serious medical need. At the very least, his testimony was sufficient to give rise to the inference that the injuries he sustained created a serious medical need. This inference is particularly likely here because Lewis suffered head injuries, the severity of which may not have been readily apparent.

We also reject the contention that the evidence is insufficient to support the conclusion that Cooper and Mulherin were consciously indifferent towards Lewis' condition following the assault. As with the jury's finding regarding medical need, Lewis' testimony provided a sufficient basis from which the jury could have concluded that Cooper and Mulherin had been deliberately indifferent towards Lewis' medical needs following the assault. Lewis testified that he requested medical assistance immediately after Walton was removed from the cell. Lewis was bleeding at the time this request was made. When Mulherin returned with the disciplinary report, Lewis asked whether a nurse or physician was coming; Mulherin indicated that he would make sure a nurse or physician was sent to Lewis' cell. Lewis was still bleeding at this time. The jury obviously chose to believe Lewis' testimony regarding Cooper and Mulherin's conduct after the assault; it chose to discredit Cooper's testimony that he asked Lewis if he was all right, and that Lewis had replied, "I'm okay." The jury could have reasonably found or inferred from Lewis' testimony that Cooper and Mulherin were deliberately indifferent towards his condition. Since the evidence allows for reasonable but differing conclusions, we cannot overturn the jury's finding. The district court did not err in denying the motion for judgment notwithstanding the verdict.

Cooper and Mulherin also contend that the case should be reversed because the evidence fails to show that prompt medical treatment would have improved his condition following the assault. Cooper and Mulherin cite *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976), in support of their argument that such a showing is required in a prisoner's suit based on the denial of medical care. In *Hampton* the prisoner did not request medical treatment until two days after the assault which caused his injuries; he did not receive medical treatment until six days after he made the request. The court concluded that the evidence was insufficient "to support the charge that the guards deliberately or intentionally prevented the plaintiff from receiving medical treatment." *Id.* at 1081. The court went on to state, in what appears to be dicta, that "[i]t was the plaintiff's burden to produce medical testimony that his complaints were capable of remedy by treatment that he did not receive." *Id.* We note that the Supreme Court's holding in *Estelle v. Gamble* does not compel the conclusion that such a showing is part of the prisoner's burden of proof. We need not reach this issue, however, because it has not been preserved for our review. The record does not reflect that any objection was made to the district court's failure to instruct the jury that Lewis was required to show his injuries were capable of remedy by treatment he did not receive. Having failed to object at trial, Cooper and Mulherin have waived any argument on appeal. *See* FED.R.CIV.P. 51.

AFFIRMED.