

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-2009

# Conn v. Bull

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3455

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Conn v. Bull" (2009). *2009 Decisions.* Paper 2010.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2010

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3455
_____

AMY S. CONN, Administratrix of the Estate
of Tony L. Armentrout, Jr.; AMY S. CONN,
in her own right; and STEVEN MAYO

Appellants

v.

MILLIE M. BULL; ANNIE S. GLADFELTER;
TERI HOLLOWAY; JAMES REBERT;
YORK COUNTY CHILDREN AND YOUTH SERVICES;
COUNTY OF YORK;
CLARA ROBINSON; and JANETTE ALFORD

_____

Consolidated Appeal from the United States
District Court for the Middle District of Pennsylvania
(Civ. No. 05-cv-01002)
District Court Judge: Honorable Christopher C. Conner

_____

AMY S. CONN, Administratrix of the Estate
of Tony L. Armentrout, Jr.; AMY S. CONN,
in her own right; and STEVEN MAYO

Appellants

v.

CLARA ROBINSON; and JAN ALFORD

_____

Consolidated Appeal from the United States
District Court for the Middle District of Pennsylvania
(Civ. No. 06-cv-01356)
District Court Judge: Honorable Christopher C. Conner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 17, 2008

_____

Before: SCIRICA, <u>Chief Judge</u>, FUENTES, and HARDIMAN, *Circuit Judges*

(Opinion Filed: January 21, 2009)

_____

**OPINION**

_____

FUENTES, *Circuit Judge*:

Appellants Amy S. Conn, mother of Tony L. Armentrout, Jr. ("T.J.") and

administratrix of his estate, and Steven Mayo, appeal from the District Court's order

granting Appellees' motion for summary judgment. We will affirm.

I.

Because we write for the parties, we set forth only the facts necessary to our

decision.

This matter arose from the tragic drowning death of T.J., a two-year-old foster child, in the backyard pool of his foster mother Millie M. Bull on July 14, 2004. T.J. was removed from the home of his birth parents, Conn and Mayo, by York County Children & Youth Services ("YCCYS") and placed in the custody of Bull, a veteran licensed foster parent. Bull had been a foster mother since 1982 and had satisfied all annual personal interviews and home safety inspections for re-licensing.

Annie M. Gladfelter was the caseworker assigned to T.J., and her supervisor was Teri Holloway. Gladfelter and Holloway were responsible for monitoring foster children, but not for placement of children, inspection of homes, or training of parents

Clara Robinson, foster care coordinator, and her supervisor Jan Alford, of the YCCYS Resource Unit, were responsible for placing children, monitoring the fitness of foster parents and the safety of homes, and ensuring compliance with licensing standards. The Resource Unit evaluated Bull and her home annually. There were no indications that Bull was unfit to be a foster parent.

Defendant James Rebert was the director of YCCYS and oversaw the caseworkers and the Resource Unit.

The record showed that in response to concerns of cleanliness and clutter in 1997, Bull was issued a provisional license, but promptly cleaned her home, and had her license reinstated. Further, although Bull had arthritis, no complaints were made regarding her

3

physical ability to care for children, and there was no evidence that she was overwhelmed even while looking after three foster children and three of her grandchildren. Indeed, Bull's daughter was present to assist in caring for the grandchildren.

However, there was a disparity between Bull and therapist Julie Dorwart with regard to pool safety. Dorwart believed the door leading to the pool was "always open," making the house unsafe. Bull testified that all doors leading to the pool had locks and one door had loud bells on it. It appears Bull satisfied the YCCYS safety checklist and, in accordance with YCCYS policy, Bull's pool conformed to local regulations.[1] Also, no safety inspection from 1982 through 2004 indicated any safety problems with door locks, and the children, including T.J., were often gated in the dining room.

## II.

Conn and Mayo commenced suit on May 17, 2005, in the United States District Court for the Middle District of Pennsylvania. They asserted a negligence claim against Bull and civil rights claims against Gladfelter, Holloway, Rebert, YCCYS, and the County of York. Conn and Mayo alleged that YCCYS and its employees did not adequately evaluate Bull or her home and that YCCYS staff members were inadequately trained. Conn and Mayo argued that this deliberate indifference to T.J.'s safety resulted in his death and thus violated his right to substantive due process. On January 13, 2006,

---

[1] Township regulations mandated that the pool be used solely for the enjoyment of occupants of the property; that the pool be at least 8 feet from the property line; and that the pool be surrounded by a fence not less than 4 feet high.

4

the District Court granted Rule 12(b)(6) motions to dismiss as to Bull, YCCYS, and York County.

On July 11, 2006, Conn and Mayo filed a companion case against Robinson and Alford and the two suits were consolidated. Gladfelter, Holloway, Rebert, Robinson, and Alford (collectively "Appellees") moved for summary judgment. Conn and Mayo opposed but did not answer Appellees' Rule 56.1 Statement of Undisputed Facts.

On June 29, 2007, the Magistrate Judge filed a Report and Recommendation ("R&R") concluding that Appellees' summary judgment motion should be granted because the record was devoid of evidence showing that Appellees' conduct "shocked the conscience." Conn and Mayo objected to the R&R. On July 23, 2007, the District Court adopted the R&R and entered judgment. Conn and Mayo appealed.

We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo, Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), and view the record in the light most favorable to Conn and Mayo.

III.

Appellants' contention that the District Court erred in deeming admitted the facts in Appellees' Local Rule 56.1 statement is meritless. The rule is clear: "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the" moving party's Rule 56.1 statement. M.D. Pa. Local R. 56.1 (emphasis added). The facts

5

in the moving party's statement are deemed admitted "unless controverted by the statement <u>required to be served</u>" by the nonmovant.  <u>Id.</u> (emphasis added).

The rule clearly mandates an answer to the moving party's statement of facts separate from the opposition brief.  Appellants failed to supply this statement.  Moreover, the District Court did not construe the evidence in favor of Appellees.  The Magistrate Judge found that there were no facts that, when construed in the light most favorable to Appellants, would warrant a finding of conscience-shocking deliberate indifference, much less any disputes of material fact that could lead to such a conclusion.  We find no error in this aspect of the District Court's analysis.

IV.

"[W]hen the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."  <u>Nicini v. Morra</u>, 212 F.3d 798, 808 (3d Cir. 2000).

In order to establish a substantive due process violation, Appellants needed to "demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred."  <u>Id.</u> at 810.  Because deliberate indifference is the proper

6

standard, "[m]ere negligence is never sufficient for substantive due process liability." Id.[2]

There is no evidence in this case that the Appellees were aware, or should have been aware, that their training of employees, certification of Bull as a foster parent, methods of inspecting the home and licensing Bull, or establishment of YCCYS policies would be inadequate to protect T.J.'s safety.

a.

The record shows that Gladfelter and Holloway were not responsible for assuring the safety of the home, evaluating Bull's fitness as a parent, or placing T.J. in foster care. These were the duties of the Resource Unit. The Resource Unit sought caseworkers' input, but it appears that caseworkers had no authority to dispute a placement.[3]

Gladfelter performed her assigned task of monitoring T.J. and visiting him monthly. While it was not necessarily her job, Gladfelter did express concern in March 2004 regarding clutter in the Bull home, which was referred to and handled by the Resource Unit.

Holloway was aware of the 1997 and 2004 incidents regarding cleanliness in the

---

[2] We have yet to determine whether deliberate indifference, outside the context of the Eighth Amendment, is governed by an objective or a subjective standard. Kaucher v. County of Bucks, 455 F.3d 418, 428 n.5 (3d Cir. 2006). We need not make that determination here, because the conduct of the Appellees in this case was not deliberately indifferent under either standard.

[3] Alford, a Resource Unit supervisor, said that placement of a child was a dual process, where the Resource Unit gave the caseworker options of potential homes and the caseworker decided which home to use. This testimony was contradicted by Gladfelter. Despite this disparity, T.J.'s placement with Bull still does not "shock the conscience."

7

Bull home, but referred them to the Resource Unit, which addressed the issues properly. She had no reason to believe that T.J.'s safety would be endangered, and was unaware of any other problems relating to Bull as a foster mother.

Furthermore, Holloway was not responsible for training Gladfelter to perform tasks she was not expected to do. In order to "establish liability on a failure to train claim under § 1983, plaintiffs 'must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" Gilles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (citation omitted). There was no evidence of deliberate indifference here, and the record is devoid of a causal connection between any failure to train Gladfelter and T.J.'s tragic death. Respondeat superior liability alone is not sufficient. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).

b.

Robinson and Alford of the Resource Unit were responsible to assure the safety of each foster home and the fitness of foster parents. The record shows that they fulfilled their responsibilities in regard to Bull by engaging in annual reviews, addressing concerns regarding cleanliness to satisfactory resolution, and complying with YCCYS safety guidelines and its policy that pools adhere to local regulations.

Robinson, who supervised the Bull home only between February and June of 2004,

8

executed the standard YCCYS safety checklist and noted the pool's compliance with local regulations. She did not believe that Bull was physically unfit to care for children. Robinson believed that Department of Public Welfare ("DPW") guidelines restricted the number of foster children to three unless the parent had a special license. While Robinson was aware that Bull looked after her three grandchildren in addition to her three foster children, she indicated that the grandchildren did not live with Bull full-time.

Alford was also familiar with Bull and her home, was aware of the pool and believed it complied with local regulations, and knew that clutter in the home had been an issue in the past. Nonetheless, Alford was satisfied with Robinson's report on the state of the home and did not believe that there was any pattern of untoward behavior by Bull. She did not believe Bull required further medical certification to be a proper foster parent.

c.

The evidence indicates that Rebert modeled YCCYS policies with regard to home safety, parent qualifications, and in-ground pools on state regulations. There is nothing in the record to suggest that he was required to enunciate any special modifications or enhancements of those policies. The evidence shows that YCCYS, under Rebert's direction, complied with DPW regulations. According to Rebert, the presence of a pool was not typically reported by employees as long as the pool complied with state regulations. Bull's pool so complied.

Just like Holloway, Rebert did not fail to train subordinates for tasks they were not

9

expected or assigned to do; his alleged failure to train was not a result of deliberate indifference to T.J.'s civil rights; and there is no evidence of a causal connection between any failure to train and T.J.'s death. Gilles, 427 F.3d at 207 n.7. As noted above, Conn and Mayo cannot rely solely on respondeat superior. Hampton, 546 F.2d at 1082.

V.

We recognize that there was conflicting testimony regarding the authority of caseworkers to approve a foster placement, the presence or absence of safety features on the doors in Bull's home, and how many children were permitted in Bull's home given the presence of her grandchildren. However, these disputes cannot be deemed material because, at best, Conn and Mayo's allegations and these factual discrepancies may implicate standards of negligence.[4] As we have said, mere negligence does not rise to the level of a substantive due process violation. Therefore, we hold that summary judgment was properly granted to the Appellees, and we will affirm the judgment of the District Court.

---

[4] This is, of course, assuming that the Appellees' actions or inactions constituted a breach of their duty owed to T.J. The presence of such a breach is not clear in this case.